**In the Interest of D.M.C., a Child.**

No. 06–04–00108–CV.

Court of Appeals of Texas, Texarkana.

Submitted May 3, 2005.

Decided July 13, 2005.

John Delk, Texarkana, for appellant.

Bobby Lockhart, Bowie County Dist. Atty., Texarkana, for appellee.

Before ROSS, CARTER and CORNELIUS,* JJ.

## OPINION

WILLIAM J. CORNELIUS, Justice (Retired).

The County Court at Law of Bowie County rendered judgment terminating Angela Denise Coleman's parental rights to her son, D.M.C., who was born on May 7, 2003. At the hearing on the petition to terminate, Coleman appeared in person and through counsel. The Texas Department of Family and Protective Services was represented by counsel, the child was represented by an Attorney Ad Litem and a Guardian Ad Litem, and the unknown father of D.M.C. was represented by an Attorney Ad Litem.

After hearing evidence and argument of counsel, the trial court found and concluded that:

1. Coleman knowingly placed or allowed D.M.C. to remain in conditions or surroundings which endangered D.M.C.'s physical or emotional well-being. TEX. FAM.CODE ANN. § 161.001(1)(D) (Vernon 2002).

2. Coleman knowingly engaged in conduct which endangered D.M.C.'s physical or emotional well-being. Tex. Fam.Code Ann. § 161.001(1)(E) (Vernon 2002).

3. Coleman had her parent-child relationship terminated with respect to another child based on a finding that her conduct violated Section 161.001(1)(D) or (E) of the Texas Family Code. Tex. Fam.Code Ann. § 161.001(1)(M) (Vernon 2002).

4. The termination of Coleman's parental rights to D.M.C. is in the best interest of D.M.C. Tex. Fam.Code Ann. § 161.001(2) (Vernon 2002).

The trial court's findings and conclusions are based on testimony given in open court by Linda Holley, a worker for the Department of Family and Protective Services; Terri Moore, a volunteer with C.A.S.A., and Guardian Ad Litem for D.M.C.; and Coleman, D.M.C.'s mother.

Coleman appeals the trial court's judgment, raising two issues: (1) there is insufficient evidence to support the termination of Coleman's parental rights as being in D.M.C.'s best interests, and (2) the trial court improperly placed the burden of proof in this proceeding on Coleman rather than on the State. We decide both of these issues against Coleman for the reasons stated hereafter.

A court may terminate a parent's parental rights if the State proves by clear and convincing evidence that the parent has engaged in one or more of the acts described in the Texas Family Code, Section 161.001, and further proves that termination is in the best interests of the child.

■ The standard of review for factual sufficiency challenges in termination cases is clear and convincing evidence. TEX. FAM.CODE ANN. § 161.001 (Vernon 2002); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex.2003). The evidence is clear and convincing when the proof is such that it produces in the mind of the trier of fact a firm belief or conviction of the truth of the allegations sought to be established. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex.2002). The Texas Supreme Court case of *In re J.F.C.*, 96 S.W.3d 256, sets out the tests for factual sufficiency of the evidence in termination cases, and they are the tests we apply in this case.

* William J. Cornelius, Chief Justice, Retired, Sitting by Assignment.

■ Although Coleman raises an issue as to factual sufficiency, she does not contest the sufficiency of the evidence to support the trial court's findings that her actions came within subsections (1)(D), (1)(E), and (1)(M) of Section 161.001 of the Texas Family Code. On the issue of evidentiary sufficiency, she contends only that there is insufficient evidence to support the trial court's finding that termination is in the best interests of D.M.C. She bases her contention on the allegation that the Guardian Ad Litem did not adequately investigate and seek to contact known relatives where D.M.C.'s siblings had been "successfully" placed in the past. In her brief, Coleman elaborates on this argument to contend, in effect, that the Guardian Ad Litem did not reasonably investigate alternative sources of placement for D.M.C., including reunification with his mother.

A guardian ad litem appointed pursuant to TEX. FAM.CODE ANN. § 107.001 (Vernon Supp.2004–2005) is not required to conduct an investigation to determine the best interests of the child. TEX. FAM.CODE ANN. § 107.002(a) (Vernon Supp.2004–2005) provides that the guardian ad litem *may* conduct an investigation *to the extent the guardian considers necessary* to determine the best interests of the child. The primary focus of the guardian's responsibility is the propriety of termination based on the conduct of the parent, not the merits of alternative placement of the child. Nevertheless, the record here contains substantial evidence that the Guardian Ad Litem and the Department of Family and Protective Services workers did investigate all reasonable and practical avenues of alternative placements with relatives as well as reunification with the mother.

Coleman, by her own admission, is a regular, heavy user of cocaine and has been repeatedly incarcerated and convicted of multiple drug offenses, as well as theft and burglary offenses. She has had four children, including D.M.C., and has been incarcerated most of the time since D.M.C.'s birth. D.M.C. and at least one other of Coleman's children tested positive for cocaine at their births. Coleman admitted that she used cocaine during her pregnancy and immediately before D.M.C.'s birth. As far as the Department of Family and Protective Services can determine, Coleman has no permanent home, and the Department has not been able to locate her at the various addresses she has given them. The only times Coleman contacted the Department was when she was incarcerated. Coleman informed the Department that she wanted to relinquish her parental rights to D.M.C. and only wanted the right to visit him, but she never signed the necessary papers to accomplish a relinquishment. Coleman does not know who is D.M.C.'s father.

The Department and the Guardian Ad Litem tried to locate D.M.C.'s father. Coleman identified a person known as Daryl Pickett as possibly being D.M.C.'s father. He was contacted and said he was interested in D.M.C., but a paternity test proved he was not D.M.C.'s father. Coleman was not able to identify any other person who could be the father. A woman who worked in the hospital where D.M.C. was born was interested in possibly taking D.M.C., but the Department did a study and found she was not a relative and did not qualify to be a foster parent.

Coleman had three other children before she gave birth to D.M.C. The first child was placed with some relatives when Coleman was incarcerated, and, as far as the Department knows, is still with them. The second child tested positive for cocaine when she was born. The Department worked with Coleman, and she agreed to place the child with relatives, but she later

took the child from the relatives and placed her with other relatives, then took her back again. At three months of age, that child weighed nine ounces less than her birth weight and was in the hospital for failure to thrive. The Department tried to locate other relatives it could work with, but was never able to get from Coleman identifications or locations of relatives so it could consider other placements. The Guardian Ad Litem testified that a maternal aunt of Coleman's had taken one of Coleman's children, but Coleman interfered with that and the child was put in danger. The Department had previously worked with Coleman extensively to try to reunify her with her other children. Coleman's lack of cooperation with possible reunification with D.M.C. is the same as it was with her other children. We find clear and convincing evidence that termination is in D.M.C.'s best interest, and we overrule Coleman's first issue.

Coleman also contends the trial court erred in placing the burden of proof on her rather than on the State. Coleman brings this contention because of a statement the trial court made in announcing its decision. Among other remarks, the trial court said, "However, there was some testimony that you did have some contacts; though they appear to be very minimal contacts, you did have some. But just not enough to meet ... meet that burden that you need to meet to achieve reunification with the child."

We find no indication in the record that the trial court placed any evidentiary burden on Coleman. The statement quoted here was made after the presentation of all the evidence and argument of counsel, and merely reflected the trial court's conclusion that Coleman's actions, as proven by the State, failed to demonstrate that she had met her burden as a parent, to provide the required protection and nurture for the child.

For all the reasons stated, we affirm the trial court's judgment.